IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| S&C ELECTRIC COMPANY, | |
| Plaintiff, | No. 21-cv-02872 |
| v. | Judge John F. Kness |
| EARTHSHINE CORP., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

This case concerns a contract dispute between Plaintiff S&C Electric Co., a manufacturer of electrical equipment headquartered in Chicago, and Defendant Earthshine Corp., S&C's (now-former) Puerto Rico sales representative. In 2013, Plaintiff S&C hired Earthshine to push its sales on the island, but in 2021, the relationship between the two deteriorated. S&C terminated their contract, believing Earthshine was not living up to its end of the bargain because it had not secured significant Puerto Rico sales. Earthshine, however, believes a lucrative opportunity was just on the horizon and that S&C decided to cut it loose to avoid paying commissions otherwise provided for by the contract.

Both sides now seek summary judgment on a discrete issue: whether Illinois or Puerto Rico law applies to the parties' contract governing their business relationship. This choice of law issue is foundational because Puerto Rico law, but not Illinois law, severely limits the ability of principals like S&C from terminating sales

representative contracts except for "just cause." But Illinois has its own comparable law, which is more permissive as to termination. S&C argues Illinois law should apply because the contract has an Illinois choice-of-law provision.

Recognizing this contractual hurdle, and that both statutes purport to be nonwaivable, Earthshine suggests that the Court adopt an approach under the Restatement (Second) of Conflict of Laws that permits the invalidation of a contractual choice-of-law provision if the other jurisdiction has "a materially greater interest than the chosen state in the determination of the particular issue." Earthshine argues that Puerto Rico has a materially greater interest than Illinois, requiring nullification of the choice-of-law provision.

As discussed below, Earthshine is correct that the Restatement test must apply under binding Seventh Circuit precedent. But even under the Restatement test, Earthshine fails to show that Puerto Rico has a materially greater interest in this dispute than Illinois. Illinois law therefore applies. As such, Plaintiff S&C's motion for summary judgment is granted, and Defendant Earthshine's motion for summary judgment is denied.

I.  BACKGROUND

S&C is a manufacturer of electrical equipment headquartered in Chicago, Illinois, where more than half of its workforce is located. (Dkt. 127 ¶ 1.) Earthshine is a Puerto Rico corporation that provides marketing, product support, consulting, and other services related to Puerto Rico's energy supply. (*See* Dkt. 125 ¶¶ 2–3.) Its operations, assets, and employees are all located in Puerto Rico. (*Id.* ¶ 4) In 2013,

S&C hired Earthshine to be its exclusive sales representative in Puerto Rico to push S&C sales on the island. (Dkt. 127 ¶¶ 2–8.) On May 29, 2013, the parties signed their first contract (the "2013 Contract"), which included an Illinois choice-of-law provision. (*Id.* ¶ 8.) The 2013 Contract was negotiated in both Puerto Rico and Chicago. (Dkt. 128-1 ¶ 5.) In 2014, the parties entered into a second contract (the "2014 Contract"), which is the operative contract at issue in this dispute. (Dkt. 127 ¶ 9.) The 2014 Contract, which is materially similar to the 2013 contract, was both initiated and terminated by S&C from Illinois. (*See id.* ¶¶ 9–12, 23.)

The 2014 Contract also included a choice-of-law provision, which states that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Illinois." (Dkt. 20-1 at 14.) Under Article 10 of the 2014 Contract, either party could terminate the contract without cause by giving at least sixty days of notice, and either party could terminate the 2014 Contract effective immediately if the other party breached any material provisions. (Dkt. 127 ¶ 14; Dkt. 20-1 at 11.)

Between 2013 and 2021, S&C, not Earthshine, was responsible for the majority of the sales it made to Puerto Rico, including: (a) preparing all customers quotes, (b) accepting and assembling all orders, (c) handling all deliveries, (d) processing all payments, (e) providing all technical support (except for on-site support, none of which Earthshine participated in), and (f) managing all inventory. (Dkt. 127 ¶ 19.) During its tenure as S&C's sales representative, Earthshine did not successfully develop any new customers that produced sales; the only partial exception to this was

3

its development of a relationship with a company that Earthshine's former CEO joined after leaving Earthshine (resulting in only minor sales). (*Id.* ¶ 22.)

S&C says that Earthshine failed to perform under the contract; this resulted in S&C's decision, communicated via formal letter from Chicago, to terminate the agreement. (*Id.* ¶ 23.) Earthshine disputes that it failed to perform and argues that it continued to help S&C develop a relationship with the Puerto Rico Electric Power Authority ("PREPA"), S&C's most important customer in Puerto Rico. (*Id.*)

This dispute arises out of S&C's decision to terminate the agreement, which Earthshine says runs afoul of the Puerto Rico Sales Representatives Act, 10 L.P.R.A. § 279 *et seq.*, ("Act 21"). Act 21 governs the relations between sales representatives and their principals and prohibits a principal from terminating the contract "except for just cause." *Id.* § 279a. Earthshine's position is that it agreed to S&C's Illinois choice-of-law clause over its objection that the clause was not compliant with Act 21. (*See, e.g.*, Dkt. 125 ¶¶ 26–29; Dkt. 116 at 8–9.) S&C nonetheless terminated the contract.

Both parties contest the reason for termination. S&C casts Earthshine as securing only minor sales and says the termination was for failure to perform. (Dkt. 127 ¶¶ 22–23.) Earthshine, however, says that S&C was on the verge of securing a lucrative opportunity in Puerto Rico and terminated Earthshine to reduce millions in commissions Earthshine says it would have otherwise been entitled to receive from those future sales. (*See* Dkt. 125 ¶¶ 30–43.)

4

On the same day as S&C's decision to terminate the Agreement, S&C filed the present lawsuit seeking a declaratory judgment that the 2014 Contract was lawfully terminated and that the Illinois choice-of-law provision is valid and enforceable. (Dkt. 1 ¶¶ 30–33.) In response to S&C's amended complaint (Dkt. 20), Earthshine counterclaimed for breach of contract, claiming that S&C's termination was made without cause in violation of Puerto Rico law. (Dkt. 49 at 22–23.)

Before the Court are cross motions for summary judgment. S&C asks the Court to grant it summary judgment on Earthshine's breach of contract counterclaim by finding that Illinois law, not Puerto Rico law, governs the contract. (Dkt. 101.) Earthshine, in turn, seeks partial summary judgment that Puerto Rico law applies to S&C's declaratory judgment claim. (Dkt. 112.)

## II.  STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up

5

or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

### III. DISCUSSION

The sole question before the Court is whether Illinois or Puerto Rico law applies to the 2014 Contract, which specifies that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Illinois." (Dkt. 20-1 at 14.) Where, as here, a federal court sits in diversity, "it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (quoting *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Accordingly, the Court turns to Illinois law to determine whether the Illinois choice-of-law provision in the 2014 Contract's applies, thus precluding application of Puerto Rico's Act 21 in favor of ISRA.

As the parties' thoughtful briefing lays out, the state authorities that outline the choice-of-law rules are, at times, opaque. Illinois courts, and federal courts applying Illinois law, sometimes appear simply to enforce bargained-for choice-of-law provisions if the choice does not upset fundamental Illinois policy. Other times, however, courts have cited the Restatement (Second) of Conflict of Laws to invalidate choice-of-law provisions. S&C urges the Court to lean on the former body of case law and suggests that the proper choice-of-law test for this case is as follows: "Illinois

6

respects the contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy." *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000). Earthshine, for its part, suggests that the Restatement operates as an exception and should be applied "in addition to" the test proposed by S&C. (Dkt. 130 at 5); *see Hendricks v. Novae Corp. Underwriting, Ltd*, 868 F.3d 542, 545 (7th Cir. 2017). This approach under the Restatement permits the invalidation of a contractual choice-of-law provision if the non-chosen state has "a materially greater interest than the chosen state in the determination of the particular issue." (Dkt. 116 at 14.)

As set out below, the Court holds that *Hendricks* modified *Fulcrum's* approach. Under *Hendricks*, a federal court sitting in diversity must interpret the general preference of Illinois law—in favor of a choice-of-law clause—in light of the Restatement. Applying that standard here, however, nonetheless leads the Court to still apply Illinois law to this dispute.

### A. Choice-of-Law

*1. Seventh Circuit precedent requires application of the Restatement.*

Plaintiff argues the Illinois choice-of-law provision must apply because the parties, each a sophisticated business, included it in their contract, and their choice does not offend fundamental Illinois policy. (Dkt. 102 at 7–9.) Although Illinois and federal courts have sometimes applied this easily-administered test (the so-called "modern" approach),[1] Illinois courts have at times eschewed or supplemented this

---

[1] *See Fulcrum*, 230 F.3d at 1011; *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454, 458 (Ill. 1975) ("Generally, the law applicable to a contract is that which the parties intended,

7

test with the Restatement (Second) Conflict of Laws.² *See, e.g.*, *Dancor Const., Inc. v. FXR Const., Inc.,* 64 N.E.3d 796, 812 (Ill. App. 2d Dist. 2016) ("Section 187 of the Restatement applies when, as here, the parties have made an express choice of law in their contract."); *Rico Industries, Inc. v. TLC Group, Inc.*, 123 N.E.3d 567, 588 (Ill. App. 1st Dist. 2018) ("In contract cases, Illinois applies the most significant contacts test, set forth in the Restatement (Second) of Conflict of Laws.") (internal quotation omitted); *Intl. Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Illinois*, 568 N.E.2d 9, 13–14 (Ill. App. 1st Dist. 1990) ("Illinois courts have adopted the Restatement in

---

assuming such an intent. When that intent is expressed, it should be followed."); *Maher and Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1006 (Ill. App. 2d Dist. 1994) ("Illinois is among those States that generally follow the modern approach to choice-of-law questions, and this approach places the greatest importance on the public policy of the State in which a case is brought."); *Aon plc v. Heffernan*, No. 16-CV-01924, 2017 WL 478270, at *6 (N.D. Ill. Feb. 6, 2017) ("But the Illinois Supreme Court and the Seventh Circuit have both held that under Illinois law, contractual choice-of-law provisions are generally enforceable, and they have reached this conclusion without resort to the Restatement's significant contacts analysis."); *Chicago Fran. Sys., Inc. v. Dominique*, No. 22-CV-2396, 2024 WL 756806, at *3 (N.D. Ill. Feb. 23, 2024) ("Illinois law upholds a choice-of-law provision if the contract is valid, and the law opted does not violate Illinois' public policy.")

² § 187(2) of the Restatement (Second) Conflict of Laws provides that:

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1971).

resolving conflict of law situations.") In the absence of controlling authority from the Supreme Court of Illinois, a District Court must follow Seventh Circuit interpretation of Illinois law. *See, e.g.*, *Puhr v. PQ Corp.*, 295 F. Supp. 3d 891, 899 (N.D. Ill. 2018). Accordingly, Earthshine is correct (Dkt. 130 at 5) that the Court must follow the Seventh Circuit's distillation of Illinois's choice-of-law rules as stated in *Hendricks*:

> Under Illinois law the contract's choice-of-law clause generally controls . . . . But there are two exceptions to this rule. [1] The law chosen by the parties cannot create a result that is contrary to the chosen state's fundamental public policy . . . and [2] the law chosen by the parties cannot create a result that is contrary to the fundamental policy of a state which has a materially greater interest in the subject matter of the litigation.

*Hendricks*, 868 F.3d at 545 (internal quotation omitted.)[3] In fact, *Hendricks* explicitly supplemented *Fulcrum*, the test cited by Plaintiff, with the Restatement. *See id.*

Both parties agree that the contract is valid and that enforcing ISRA, an Illinois state law, is definitionally consistent with fundamental Illinois policy; this means that the first exception is inapplicable. (Dkt. 102 at 7–9; *see generally* Dkt. 126.) Accordingly, the dispute centers solely around the second exception: whether

---

[3] Plaintiff objects to the melding of the modern and Restatement tests, arguing that the Court should instead choose one of the tests to apply. (Dkt. 134 at 9–10.) Were this to be a matter of first impression, Plaintiff's argument would be on stronger footing. Illinois decisional law on this issue is not always clear, but the weight of the authority appears to suggest that the Restatement is a guide, not a rule. *See, e.g.*, *Maher*, 640 N.E.2d at 1006 ("[T]he analysis contained in the Restatement is a guide for courts; it is not black-letter law to be upheld against all other considerations."); *Dancor*, 64 N.E.3d at 812 (similar); *Aon*, 2017 WL 478270, at *6. Absent guidance from the Illinois Supreme Court, however, this Court is bound to follow the Seventh Circuit's interpretation of Illinois law, which combines the modern and Restatement tests. *See Savis, Inc. v. Cardenas*, No. 18 CV 6521, 2018 WL 5279311, at *10 (N.D. Ill. Oct. 24, 2018) (applying the Restatement).

9

the parties' choice of Illinois law "is contrary to the fundamental policy of a state which has a materially greater interest in the subject matter of the litigation." *Hendricks*, 868 F.3d at 545; *see also* Restatement (Second) of Conflict of Laws § 187(2)(b). Both Illinois and Puerto Rico have a fundamental policy interest in sales representative policy, as evidenced by ISRA and Act 21. Illinois law thus applies unless Puerto Rico has a materially greater interest.

> 2. *Puerto Rico does not have a materially greater interest than Illinois in the subject matter of this litigation.*

Whether another state has a "materially greater interest in the subject matter of the litigation depends on '(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.'" *Hendricks*, 868 F.3d at 545 (quoting Restatement (Second) of Conflict of Laws § 188 (1971)). A careful application of these factors here favors neither state.

Take the parties' locations and the place of contracting and negotiation. Earthshine is a Puerto Rico corporation, and its operations, assets, and employees are all located in Puerto Rico. (Dkt. 125 ¶¶ 2–4.) S&C is headquartered in Chicago, Illinois, where more than half of its work force is located. (Dkt. 127 ¶ 1.) The initial contract between the parties (the 2013 Contract) was negotiated in both Puerto Rico and Chicago. (Dkt. 128-1 ¶ 5; Dkt. 135 ¶ 1.) And the operative 2014 Contract, which is materially similar to the initial contract, was both initiated by S&C and terminated by S&C from Illinois. (*See* Dkt. 127 ¶ 9–12, 23.) At least one S&C employee, its

10

Regional Manager for the Caribbean, lives in Puerto Rico. These factors are a mixed bag and do not point unequivocally to either state having a materially greater interest.

So too for the place of performance and the location and subject matter of the contract. On one hand, the purpose of the agreement was for Earthshine to act as S&C's exclusive sales representative in Puerto Rico. (Dkt. 125 ¶ 8.) Earthshine stresses that its work was done exclusively in Puerto Rico and that S&C contracted with Earthshine for its focus on getting products to the Puerto Rican market. (Dkt. 126 at 18.) Those facts favor application of Puerto Rico law. On the other hand, S&C argues that, from Illinois, it was responsible for preparing all customer quotes, accepting and assembling all orders, handling all deliveries, processing all payments, providing all technical support (Earthshine disputes this point, but it is minor), product manufacturing, and managing all inventory. (Dkt. 128-1 ¶ 20; Dkt. 102 at 16.) S&C thus believes the subject matter of the contract was to get its Illinois-made products to Puerto Rico. (Dkt. 102 at 16.) That favors Illinois. Under § 188, these factors are a wash; Earthshine has thus not shown that Puerto Rico has a *materially* greater interest here that could justify invalidating the parties' bargained-for choice-of-law agreement.

   3. *Illinois has an interest in the freedom to contract, which Act 21 would inhibit.*

Earthshine's insistence on the application of Act 21, and its reason for doing so, also merit discussion. Act 21 interferes with traditional principles of contract law to protect sales representatives by prohibiting the principal from terminating the

11

sales representation contract "except for just cause." *Ramos v. Willert Home Prods, Inc.*, 651 F. Supp. 3d 500, 505 (D.P.R. 2023) (quoting 10 L.P.R.A. § 279a). Termination without just cause subjects the principal to (potentially punitive) damages as delineated in the statute. *See* 10 L.P.R.A. § 279c. As S&C points out, the practical effect of Act 21 is to extend the contract indefinitely unless there is just cause for its termination. (Dkt. 124 at 10 (citing *Ballester Hermanos, Inc. v. Campbell Soup Co.*, 797 F. Supp. 103, 106 (D.P.R. 1992).) Conversely, ISRA "does not specify the price or duration of sales agency contracts. To the contrary it says that, with respect to the time of payment, the only subject the state legislature has sought to regulate, '[t]he terms of the contract between the principal and sales-person shall control.' " *Indus. Representatives, Inc. v. CP Clare Corp.*, 74 F.3d 128, 131 (7th Cir. 1996) (quoting 820 ILCS 120/1(2)(A)). Although Act 21 and ISRA regulate the relationship between principals and their sales representatives, ISRA generally privileges the parties' contractual agreement, while Act 21 purports to supersede that agreement with respect to termination.

S&C persuasively argues that Act 21's interference with the parties' ability to negotiate their contract offends fundamental Illinois public policy, which "strongly favors the freedom to contract," *15th Place Condo. Ass'n v. South Campus Dev. Team, LLC*, 14 N.E.3d 592, 598 (Ill. App. 1st Dist. 2014), and disfavors perpetual contracts. *Rico Industries, Inc. v. TLC Group, Inc.*, 6 N.E.3d 415, 420 (Ill. App. 1st Dist. 2014); *see also Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 215 (1997) ("The laws and the public policy of the state permit and require freedom of contracting between

12

competent parties."); *In re Kimbrell Realty/Jeth Court, LLC*, 483 B.R. 679, 686 (C.D. Ill. 2012) ("The fundamental policy of freedom of contract is a strong and well-established public policy in Illinois.") (citing cases); (Dkt. 102 at 12–15.)

Earthshine critiques S&C's reliance on the rule in *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 757–60 (2d Dist. 1987). (Dkt. 126 at 16.) *Potomac* cited a now-disavowed test that made it difficult to displace a choice-of-law provision on public policy grounds by privileging the freedom to contract over public policy; the court stated that "public policy considerations must be strong and of a fundamental nature to justify overriding the chosen law of the parties.*" Potomac*, 156 Ill. App. 3d at 759; (*see* Dkt. 126 at 16) (citing *Midwest Enters., Inc. v. Generac Corp.*, No. 91 C 2229, 1991 WL 169059, at *4 (N.D. Ill. Aug. 27, 1991).) Although the choice-of-law test used in *Potomac* may, as discussed above, no longer be valid, Earthshine incorrectly maintains that the policy of Illinois in favor of the right to contract is irrelevant. Nor is S&C correct that the right to contract alone requires enforcement of the Illinois choice-of-law provision. (Dkt. 134 at 7–9). Rather, the policy preference of Illinois—that parties bargain over contract terms such as termination—is relevant to which state has a greater interest in the subject matter of this litigation.

If Earthshine were correct, Puerto Rico's Act 21 would automatically win out, no matter what Illinois (or any other state's) law had to say about the matter. As Earthshine views it, Puerto Rico's fundamental public policy interest is *always* to protect sales representatives in the state. (*See* Dkt. 116 at 17.) But that analysis belies the purpose of the Restatement test, which is to consider which state has a

13

greater interest in the subject matter of the litigation. Put another way, to consider under the Restatement which state has a greater material interest, we must know what each state is interested in. Earthshine would exclude consideration of Illinois's countervailing interest in the freedom to contract by Illinois businesses, which, although not inviolable, is nevertheless a fundamental policy. This interest is not theoretical; it is reflected in ISRA itself, which provides for prompt payment of commissions due at the time of termination, and for treble damages if payment is not timely, but does not otherwise interfere with the parties' ability to contractually determine whether a party may terminate a sales representative agreement. *See* 820 ILCS 120/2–3.

In sum, this choice-of-law question is not as easy as either party suggests. Under the Restatement factors, both Illinois and Puerto Rico have fundamental policy interests at stake. As S&C correctly states, this is an "atypical case in that there are competing public policies at stake, and thus one or the other is likely to be offended." (Dkt. 134 at 5.) On these facts, then, it cannot be said that Puerto Rico has a materially greater interest in the subject matter of the litigation than Illinois. As such, the general rule favoring the bargained-for choice-of-law rule applies, and Illinois law governs. *See Hendricks*, 868 F.3d at 545 (citing *Fulcrum*, 230 F.3d at 1011).

   4. *Unclean Hands*

Earthshine argues in the alternative that Puerto Rico law must be applied through the doctrine of unclean hands. Under Illinois law, a party may not obtain equitable relief "if that party has itself has engaged in misconduct in connection with

14

the subject matter of the litigation." *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1064 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015). Earthshine argues that because it advised S&C of the applicability of Act 21 during the contract negotiation, S&C's demand that Earthshine sign the contract was done in bad faith and thus precludes this action. (Dkt. 116 at 18–19.) In a footnote, Earthshine also labels the choice-of-law clause an unenforceable "contract of adhesion." (*Id.* at 18 n.3.)

Earthshine's argument fails. Under the doctrine of unclean hands, the "party's misconduct must arise to the level of fraud or bad faith." *Intercon*, 969 F. Supp. 2d at 1064. But it is neither bad faith nor fraud for a sophisticated business entity to negotiate a choice-of-law clause with its counterparty.

Earthshine's decision to accept S&C's terms, rather than walk away from the agreement, is also not a contract of adhesion. Under Illinois law, a contract of adhesion is "a contract submitted by one party to another on a take-it-or-leave-it basis, without any opportunity to negotiate its terms." *Ironbeam, Inc. v. Evert*, 417 F. Supp. 3d 1031, 1037 (N.D. Ill. 2019) (internal quotation omitted). Earthshine's own submissions establish that it had plentiful opportunity to negotiate the contract term at issue, and in fact went back and forth with S&C repeatedly on this issue. (*E.g.*, Dkt 116 at 7–9.) Earthshine's business decision to accept S&C's terms and litigate any legal disagreements post-hoc should their agreement falter does not support a finding that this agreement was a contract of adhesion.

## IV. CONCLUSION

For the foregoing reasons, S&C's motion for summary judgment (Dkt. 102) is granted and Earthshine's motion for summary judgment (Dkt. 112) is denied.

SO ORDERED in No. 21-cv-02872.

Date: March 31, 2025

JOHN F. KNESS
United States District Judge